IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| Alexander Mayer,<br><br>             Plaintiff,<br><br>  vs.<br><br>gpac, LLP,<br><br>             Defendant. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiff Alexander Mayer ("Plaintiff" or "Mayer"), as and for his claims against Defendant gpac, LLP ("gpac"), states and alleges as follows:

## NATURE OF ACTION

1. This action arises under the Declaratory Judgments Act, 28 U.S.C. §§ 2201-02 arising from Mayer's desire and intent to enter into and continue an employment relationship with Green Key Resources LLC ("Green Key"). Mayer, who terminated his employment with gpac, signed an Account Executive Employment Agreement ("Employment Agreement") with gpac. gpac now claims that the Employment Agreement prevents Mayer from commencing or continuing employment with Green Key or taking other lawful employment actions based on the vague, overbroad, and unenforceable restrictive covenants contained in the Employment Agreement. gpac has indicated it will file a lawsuit seeking to enforce the restrictive covenants in the Employment Agreement, including by injunction, that, if granted, will prevent Mayer from working in his chosen profession in any capacity anywhere in the United States and will effectively force Mayer to leave the industry entirely.

2. By this action, Mayer respectfully requests that this Court declare the Employment Agreement's restrictive covenants to be unlawful and unenforceable and enjoin gpac from taking

further actions to illegally stifle competition and improperly interfere with Green Key's employment relationship with Mayer.

## PARTIES

3. Mayer is a natural person and citizen of the State of Tennessee.

4. gpac is a South Dakota limited liability partnership with its principal place of business in Lincoln County, South Dakota. Pursuant to gpac's publicly available Annual Report filing, gpac has two partners: 1) Ryan Good and 2) Matthew Good. Both partners state their residence as 116 W 69th Street, Suite 200, Sioux Falls, South Dakota 57108.

## JURISDICTION AND VENUE

5. This Court has both (1) general personal jurisdiction over gpac because it regularly conducts business in the State of Tennessee and has substantial business dealings with individuals located in Tennessee; and (2) specific personal jurisdiction over gpac because gpac employs and has employed individuals in Tennessee – including Mayer, who currently works, and who wishes to work for Green Key, primarily in Tennessee, and who is subject to restrictive covenants with gpac which cause harm and injury to Mayer in Tennessee.

6. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper under 28 U.S.C. § 1391(b) because Mayer is a citizen of this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND

### Green Key Resources, LLC.

8. Headquartered in New York, New York, Green Key is a leading nationwide executive recruiting firm specializing in permanent placement, contract consulting, temp-to-hire, and temporary staffing. Green Key fills tens of thousands of positions each year in various industries, including accounting and finance, pharmaceutical/life sciences, healthcare, information technology (IT), professional support, financial services, human resources, legal support, hospitality, creative, marketing technology, and architecture, engineering, and construction across the country.

9. Green Key focuses on its people-first recruiting philosophy and strong industry connections to deliver qualified candidates fast from anywhere in the U.S.

### Mayer's Employment at gpac and the Employment Agreement

10. Headquartered in Sioux Falls, South Dakota, gpac is a staffing and recruiting company that—according to its website—operates in a variety of industries including accounting, agriculture, architecture, construction, education, energy, engineering, finance, funeral services, healthcare, insurance, legal services, life sciences, manufacturing, marketing, retail, real estate, transportation, veterinary, and waste management.

11. In or about August 2019, Mayer was hired by gpac to work as an Account Executive. Mayer lived in Tennessee at the time of his hiring by gpac and, after his employment with gpac commenced, Mayer performed all activities on behalf of gpac from gpac's office in Nashville, Tennessee, until July 2021. When gpac closed its physical office in Nashville in July 2021, Mayer proceeded to perform all activities on behalf of gpac from his home in Tennessee.

12. As an Account Executive, Mayer's primary job duties at gpac involved placing full-time or permanent placement workers, including architects and project architects, in the

architecture, construction and real estate development industry. Mayer placed candidates for gpac clients located almost exclusively in Colorado. Although Mayer worked out of his home in Tennessee, he placed less than three candidates with clients located in Tennessee, and did not otherwise direct any work activities in the State of Tennessee. In other words, Mayer's only real connection to Tennessee during his employment with gpac was that he resided in Tennessee and worked remotely from his home in Tennessee.

13. Upon commencement of employment with gpac, Mayer signed an Account Executive Employment Agreement ("Employment Agreement") with gpac on April 14, 2022. The Employment Agreement contains various provisions, including a "Non-Solicitation Covenant" and "Non-Compete Covenant" (collectively referred to herein as the "Restrictive Covenants").

14. The Employment Agreement includes the following "Non-Solicitation Covenant":

> 9.1   For a period of two years following the effective date of the termination of Employee's employment with the Company, and provided that Company continues to remain in the Personnel Placement Service Business, Employee shall not solicit any Client of Company located within the United States for the purpose of performing or offering personnel placement services or any other service in competition with Company.
>
> 9.2   For a period of two years following the effective date of the termination of Employee's employment with Company, and provided that Company continues to remain in the Personnel Placement Service Business, Employee shall not solicit any Candidate of Company located within the United States for the purpose of performing or offering Personnel Placement Services or any other service in competition with Company.
>
> 9.3   For a period of two years following the effective date of the termination of Employee's employment with Company, and provided that Company continues to remain in the Personnel Placement Service Business, Employee shall not solicit any Interim Employee of Company located within the United States for the purpose of performing or offering Personnel Placement Services or any other service in competition with Company.

Compl. Ex. A, ¶ 9.

15. The Employment Agreement defines "Candidate" as "a person who has provided Company with the candidate's job history information, resume, or an application, for purposes of finding a permanent or interim position of employment." Compl. Ex. A, ¶ 1.2.

16. The Employment Agreement defines "Client" as "an employer, which has given Company a job order for a permanent position or an interim assignment, or which Company has solicited for a job order for a permanent position or an interim assignment, and includes the personnel of such an employer." Compl. Ex. A, ¶ 1.3.

17. The Employment Agreement defines "Interim Employee" as "a person who, at any time, has been referred by Company to a client and accepted by the client for interim assignments." Compl. Ex. A, ¶ 1.5.

18. The Employment Agreement also includes the following "Non-Competition Covenant":

> 10.1 For a period of two years following the effective date of termination of Employee's employment with Company, and provided that Company continues to remain in the Personnel Placement Service Business, Employee shall not engage directly or indirectly in the same business or profession as that of Company, which is the Personnel Placement Service Business, anywhere within the United States.
>
> 10.2 For a period of two years following the effective date of termination of Employee's employment with Company, and provided that Company continues to remain in the Personnel Placement Service Business, Employee shall not compete with Company within the United States.

Compl. Ex. A, ¶ 10.

19. The Employment Agreement defines "Personnel Placement Service Business" as "both permanent and interim placement service business and all other personnel services and functions and related services." Compl. Ex. A, ¶ 1.9.

20. The Employment Agreement defines "Permanent Personnel Placement Service Business" as "the business of finding positions of employment for persons, locating personnel for clients, and related activities." Compl. Ex. A, ¶ 1.8.

21. The Employment Agreement defines "Interim Personnel Placement Service Business" as "the business of selecting persons and providing those persons to clients on interim assignments, and related activities." Compl. Ex. A, ¶1.6.

### Mayer's Current Employment at Green Key Resources, LLC

22. In early 2022, Mayer was contacted by Green Key about a possible opportunity with Green Key. Mayer subsequently applied for a position as a Recruiter at Green Key.

23. Mayer began employment with Green Key on or about August 11, 2022.

24. As a Recruiter at Green Key, Mayer's role is to identify candidates for placement for permanent roles with Green Key clients located exclusively in Austin, Texas. Importantly, Mayer does not seek or place candidates for any Green Key clients located in the State of Colorado, which is the geographic territory in which he almost exclusively recruited and placed candidates during his employment with gpac.

25. Mayer has not solicited any gpac clients or placement candidates with which he worked or about which he gained knowledge during the course of his employment with gpac since beginning employment with Green Key.

26. On or about August 17, 2022, counsel for gpac sent a letter to Mayer regarding the Employment Agreement he entered into with gpac and inquired whether Mayer intended to engage in recruiting activities in the next two years.

27. In response to the communication from gpac on August 17, 2022, counsel for Green Key and Mayer contacted gpac to discuss Mayer's employment at Green Key. gpac informed

Green Key that Mayer was prohibited from working in the recruiting or temporary placement industry anywhere in the United States, without regard to whether Mayer was placing candidates in the same industries or in the same geographic region as when he was employed with gpac. In other words, gpac has taken the position that the non-competition provision contained in the Employment Agreement precludes Mayer from working for a competitor, in virtually any capacity, in the executive recruiting or temporary staffing industry following his brief employment with gpac.

28. In early November 2022, Green Key advised gpac that it was prepared to continue to employ Mayer in a role where he would not have client contact and where he would only work in Texas (rather than the states in which he had worked on behalf of gpac). On November 17, 2022, gpac informed Green Key that, if Green Key did not immediately terminate Mayer's employment, gpac intended to commence a lawsuit against Mayer in South Dakota to enforce the non-competition provision of the Employment Agreement against Mayer.

29. Mayer believes the Employment Agreement, including the Restrictive Covenants, is overbroad, unenforceable, and unlawful under both Tennessee and South Dakota law.

## COUNT I– DECLARATORY JUDGMENT

30. Mayer restates and incorporates the allegations contained in Paragraphs 1-29 of the Complaint as though fully set forth herein.

31. This Court has the power to construe contracts under the Declaratory Judgments Act, 28 U.S.C. § 2201(a), which provides that:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

32. A real, actual, and substantial controversy exists between Mayer and gpac, who have adverse legal interests. The controversy is substantial due to its impact on commerce generally and on Green Key and Mayer specifically. The Employment Agreement, as well as gpac's threatened claims, purport to prevent Mayer from engaging in certain lawful employment practices, including any employment for Green Key. Moreover, gpac has sued numerous employees for allegedly violating, including but not limited to, the Non-Competition Covenant, when those individuals left to join a competitor. gpac has specifically requested and received injunctive relief against other former employees for, including but not limited to, prohibiting the individual's ability to take employment with any recruiting business throughout the United States and prohibiting the individual's ability to solicit and accept business from any gpac prospective or current client or candidate throughout the United States. As outlined below, Mayer seeks a declaration that the Employment Agreement, including the Non-Competition and Non-Solicitation Covenants, are unlawful and that Mayer's actions are not in violation or interfering thereof.

33. This Court has an interest in protecting Tennessee employees from anti-competitive conduct by out-of-state employers, which includes protecting Tennessee employees from any litigation based on a restrictive covenant that would interfere with or restrict the freedom of a Tennessee resident and employee to engage in his chosen profession.

34. Although the Employment Agreement purports to be governed by South Dakota law, it is inappropriate to subject Mayer to South Dakota law because he never worked in South Dakota during his employment with gpac, he did not serve and clients or candidates in South Dakota, and he otherwise did not conduct business activities in South Dakota. Additionally, Mayer executed the Employment Agreement from his home in Tennessee – not in South Dakota.

8

Case 3:22-cv-00949   Document 1   Filed 11/22/22   Page 8 of 14 PageID #: 8

35. The Employment Agreement is a contract of adhesion, and its terms are oppressive and expand beyond what an ordinary person would reasonably expect. Mayer, an ordinary person residing in Tennessee, should not expect to be subject to the laws of South Dakota. The Employment Agreement was not freely bargained-for and not freely entered into by Mayer, as gpac had the superior bargaining power. Mayer had no choice but to sign the Employment Agreement, or Mayer would lose his employment. As a result, the forum selection and choice-of-law provisions in the Employment Agreement should not apply and the Employment Agreement should instead be governed by Tennessee law.

36. Restrictive covenants like those purporting to be contained in the Employment Agreement are disfavored, and strictly and narrowly construed, under Tennessee law.

37. gpac cannot show special facts over and above ordinary competition, such that without the Employment Agreement, including the Non-Competition and Non-Solicitation Covenants, Mayer would gain an unfair advantage in competition with gpac. gpac did not provide Mayer with specialized training; Mayer was not given access to trade or business secrets or other confidential information; and gpac's customers do not associate gpac's business with Mayer as Mayer did not have repeated contacts with the customers on behalf of gpac.

38. gpac does not have a legitimate business interest for the protection of which the Employment Agreement is reasonable.

39. The Non-Solicitation Covenant purports to impermissibly prohibit Mayer from soliciting *prospective* clients, *prospective* interim employees, or *prospective* candidates of gpac in violation of Tennessee law.

40. The Non-Solicitation Covenant purports to impermissibly prohibit Mayer from soliciting clients, interim employees, or candidates (and prospective of the same), with which *he had no prior contact*, in violation of Tennessee law

41. The Non-Solicitation Covenant's definition of "Permanent Personnel Placement Service Business" is overbroad and in violation of Tennessee law.

42. The geographic scope of the Non-Competition Agreement, purporting to prevent Mayer from working in his chosen profession in any capacity anywhere within the United States, is overbroad and in violation of Tennessee.

43. The Employment Agreement is in violation of Tennessee law because gpac does not have a legitimate business interest to protect, and the time, scope, and territorial limitations are unreasonable.

44. But even if the Court applies South Dakota law to the Employment Agreement, it remains unenforceable under South Dakota law.

45. South Dakota Codified Law § 53-9-8 provides that "[a]ny contract restraining exercise of a lawful profession, trade, or business is void to that extent, except as provided by §§ 53-9-9 to 53-9-12, inclusive."

46. South Dakota Codified Law § 53-9-11 provides that:

> [e]xcept as otherwise provided in § 53-9-11.1, an employee may agree with an employer at the time of employment or at any time during employment not to engage directly or indirectly in the same business or profession as that of the employer for any period not exceeding two years from the date of termination of the agreement and not to solicit existing customers of the employer within a specified county, first- or second-class municipality, or other specified area for any period not exceeding two years from the date of termination of the agreement, if the employer continues to carry on a like business therein.

47. The Non-Solicitation Covenant purports to impermissibly prohibit Mayer from soliciting *prospective* clients, *prospective* interim employees, or *prospective* candidates of gpac in violation of South Dakota law.

48. The Non-Solicitation Covenant purports to impermissibly prohibit Mayer from soliciting clients, interim employees, or candidates (and prospective of the same), with which *he had no prior contact*, in violation of South Dakota law.

49. The Non-Solicitation Covenant's definition of "Permanent Personnel Placement Service Business" is overbroad and in violation of South Dakota law.

50. The geographic scope of the Non-Competition Agreement, purporting to prevent Mayer from working in his chosen profession in any capacity anywhere within the United States, is overbroad and in violation of South Dakota law.

51. Mayer's employment at Green Key is not in competition with gpac.

52. Accordingly, Mayer's employment at Green Key is not in violation of the Non-Competition Covenant, and Green Key's employment of May is not in interference with the Non-Competition Covenant.

**WHEREFORE**, Plaintiff Mayer respectfully requests the Court enter judgment against gpac as follows:

1. For a declaratory judgment that the Employment Agreement's Non-Solicitation Covenant and Non-Competition Covenants are invalid and unenforceable as written;

2. For a declaratory judgment that Mayer's employment with Green Key is not in competition with gpac, and is not in violation of the Non-Competition Covenant;

3. For a preliminary and permanent injunction prohibiting gpac's unfair competition by enjoining and preventing gpac from:

a) Enforcing the Employment Agreement's Non-Solicitation Covenant and Non-Competition Covenant in a court or tribunal in South Dakota or in any foreign State.

b) Seeking an injunction in a court or tribunal in South Dakota or any foreign state to the extent such injunction would prevent Mayer's ability to be employed in his current (or similar) capacity at Green Key;

4. For an award of compensatory damages;

5. For prejudgment interest on all damages awarded; and

6. For an award of costs, disbursements, and attorneys' fees as allowed by law.

## **JURY TRIAL DEMAND**

Plaintiff Mayer demands a trial by jury on all issues so triable in the case.

Date: November 22, 2022           */s/ J. Christopher Anderson*
                                  J. Christopher Anderson, Bar No. 019279
                                  chrisanderson@littler.com

                                  LITTLER MENDELSON, P.C.
                                  333 Commerce Street, Suite 1450
                                  Nashville, TN  37201
                                  Telephone:    615.383.3033
                                  Facsimile:    615.383.3323

                                  Jeremy D. Sosna, MN Bar No. 290233
                                  (Request for Admission *Pro hac vice*
                                  forthcoming)
                                  jsosna@littler.com
                                  Lauren E. Clements, MN #0399187)
                                  (Request for Admission *Pro hac vice*
                                  forthcoming)
                                  lclements@littler.com

                                  LITTLER MENDELSON, P.C.
                                  80 South 8th Street, Suite 1300
                                  Minneapolis, MN  55402
                                  Telephone:    612.630.1000

                                  Attorneys for Plaintiff
                                  Alexander Mayer

13

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.

*/s/ J. Christopher Anderson*
J. Christopher Anderson
